UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANNY E. THRASHER,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

                               /

Case No. 4:05-cv-81
Hon. Gordon J. Quist

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB).

Plaintiff was born on August 26, 1949 and completed school through the 10th grade (AR 62, 209).[1] Plaintiff stated that he became disabled on June 1, 1994 (AR 62). He had previous employment as a springmaker for a spring tool manufacturer and as a stock person in a convenience store (AR 99). Plaintiff identified his disabling conditions as back surgery, sleep apnea, a recurrent staph infection in his right leg (three incidents) and swelling in the right leg (AR 98). After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying these claims on April 20, 2005 (AR 13-20). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

**I.  LEGAL STANDARD**

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).   A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only.  This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence.  *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits.  A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905

F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. Following the five steps, the ALJ initially found that plaintiff had not engaged in substantial gainful activity since the alleged

onset date of disability on June 1, 1994 and that he was insured for DIB through December 31, 1998 (AR 20, 62). Second, the ALJ found that he suffered from the severe impairments of peripheral vascular disease with recurrent staph infections, back trouble, and sleep apnea[2] (AR 19). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 19). The ALJ decided at the fourth step that, prior to his last insured date of December 31, 1998, plaintiff had the following residual functional capacity (RFC):

> lifting and carrying no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools, standing or walking more than 2 hours in an 8 hour day, sitting more than 6 hours in an 8 hour day, working at jobs that risk injury to the legs such as heavy bumping or sharp traumatic contact.

(AR 19). The ALJ further concluded that plaintiff was unable to perform his past relevant work (AR 19).

At the fifth step, the ALJ determined that plaintiff was capable of performing a significant range of sedentary work (AR 19). The ALJ found that plaintiff could perform 10,000 jobs in Michigan, such as a bench worker, inspector, hand tester or assembler (AR 19). The ALJ also found plaintiff's allegations regarding his limitations as not totally credible (AR 19). Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 19).

---

[2] "Sleep apnea" is defined as "transient attacks of failure of automatic control of respiration, resulting in alveolar hyperventilation, which becomes more pronounced during sleep." *Dorland's Illustrated Medical Dictionary* (28th Ed.) at 106.

**III. ANALYSIS**

Plaintiff raises three issues.

**A.     ALJ mischaracterized plaintiff's age under the medical vocational guidelines**

In his brief, plaintiff points out that the ALJ mischaracterized him as a "younger individual between the ages of 18 and 44" (AR 17). Plaintiff's Brief at 3. Plaintiff's age determines the applicable medical-vocational guidelines or grids used by the ALJ to evaluate disability.

The grids "take account only of a claimant's 'exertional' impairment, that is 'an impairment which manifests itself by limitations in meeting the strength requirements of jobs[.]' 20 C.F.R., Part 404, Subpt. P, App. 2 § 200.00(e)." *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990). An ALJ may use the grids, rather than expert testimony, to show that a significant number of jobs exist in the economy when the claimant's characteristics fit the criteria of the guidelines. *See Taylor v. Commissioner of Social Security*, No. 98-4504, 1999 WL 1073656 at * 1 (6th Cir. Nov. 17, 1999); *Siterlet v. Secretary of Health and Human Servs.*, 823 F.2d 918, 922 (6th Cir. 1987). The grids only apply to a claimant when all factors (i.e., age, work experience, physical ability and education) coincide with the elements as set forth in the grids. *See Taylor*, 1999 WL 1073656 at *1; *Kirk v. Secretary of Health and Human Servs.*, 667 F. 2d 524, 533-35 (6th Cir. 1981). When the findings of fact coincide with those four factors, the grids direct a conclusion as to disability or non-disability and vocational testimony is not required. *See Ziegler v. Sullivan*, No. 89-1708, 1990 WL 6954 at *5 (6th Cir. Feb. 1, 1990); *Kirk*, 667 F. 2d at 528-30.

Under the facts of this case, the ALJ's error is harmless. Plaintiff was 49 years old when his insured status expired on December 31, 1998. For purposes of applying the grids, a "younger person" is defined as follows:

5

> If you are a younger person (under age 50), we generally do not consider that your age will seriously affect your ability to adjust to other work. However, in some circumstances, we consider that persons age 45-49 are more limited in their ability to adjust to other work than persons who have not attained age 45.

20 C.F.R. § 404.1563(c). Even if plaintiff was considered to be a younger individual, age 45-49, limited to sedentary work with a limited education and no transferable skills from semi-skilled work previously performed, he still would be deemed "not disabled" under the grids. *See* 20 C.F.R., Part 404, Subpt. P, App. 2, § 201.19.

### B. Whether any evidence in the record supports the ALJ's conclusion that the plaintiff was capable of sedentary work prior to 1998?

Plaintiff contends that the testimony of Vernon Wendt, M.D., the medical expert (ME), does not support the ALJ's decision that he could perform sedentary work. Specifically, plaintiff contends that the ME's testimony is contrary to the ALJ's conclusions, that the ME's testimony is difficult to understand, and that the ALJ interrupted the ME's responses with respect to his sleep problems to obtain "the desired result." Plaintiff's Brief at 9.

As an initial matter, the relevant time period for plaintiff's claim is from his alleged onset date of June 1, 1994 through his last insured dated of December 31, 1998. Since plaintiff's insured status for purposes of receiving disability insurance expired on December 31, 1998, he cannot be found disabled unless he can establish that a disability existed on or before that date. *See Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir. 1984). "Evidence relating to a later time period is only minimally probative." *Jones v. Commissioner of Social Security*, No. 96-2173, 1997 WL 413641 at *1 (6th Cir. July 17, 1997), *citing Siterlet*, 823 F.2d at 920. Such evidence is only considered to the extent it illuminates a claimant's health before the expiration of her insured status.

*Jones*, 1997 WL 413641 at *1; *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). Accordingly, evidence of plaintiff's treatment after 1998 can only be minimally probative of plaintiff's condition as it existed on or before December 31, 1998.

### 1. ME's testimony

The ME identified the following problems: recurrent staph infections in the leg; recurrent swelling in the leg; a history of Reynaud's Phenomena; sleep apnea; and disk disease with minor symptoms of back pain (AR 234-35). With respect to plaintiff's leg, the ME testified that the recurrent swelling and other symptoms would limit him to sedentary activity (AR 235-36). The ME testified that plaintiff had been hospitalized for his leg problem in 1995, 1997, 1999 and 2002 (AR 236).[3] The following exchange occurred between the ALJ and the ME with respect to the leg problem:

> Q: Okay. Would he have been limited to sedentary work prior to 1998?
>
> A: Probably not. Based on the record. But from his symptoms, this may antedate even 1998 as far as his sleep problems are concerned. As far as the leg problems, that was still an ongoing process and it seems to be precipitated by any type of trauma. Any type of injury. Any type of banging or bumping. Whatever the situation. And this seems to bring out recurrent staph infection. Again, it's an unusual phenomena because most of the time, once you get this bug you should be able to eradicate it. And it's hard to say now why this has continued. But according to the hospitalization, he definitely needed the antibiotics because he would have a period of drainage right from the site of where the injury was. In that area.

(AR 236-37).

Plaintiff's attorney attempted to elicit more specific information regarding plaintiff's ability to perform sedentary work:

---

[3] Plaintiff reported to an examining physician that he had a medical history of staph infection of the leg in 1993, 1995, 1997 and 2002 (AR 152-61).

7

> Q: Would Mr. Thrasher have been limited to sedentary or even more restricted work after he began to experience those infections in his leg?
>
> A: I think at that point in time, after the first episode cleared, and then the hospitalization and so on and so forth, he certainly should have been able to attempt some sedentary position. But these were recurrent evidences of infection, and again it would have to be in a job situation in which he would not be subjected to trauma, injury, whatever the situation might be. But that's all that I can say from the record.
>
> Q: And in '97 he suffered the second hospitalization from the (INAUDIBLE)
>
> A: Yes, he did. That's correct.
>
> Q: So the advice, medically, would be that he should become more restricted when it began to become a recurrent problem. Is that correct?
>
> A: That's correct.
>
> Q: So he would be restricted to sedentary or more restricted activity after he had the second and the recurrence of the condition.
>
> A: Yes. Exactly.

(AR 237-38).

The ME testified that plaintiff's sleep apnea first appeared in the record in December 1998 (AR 236) and described this condition as follows:

> He has another problem which has been developed throughout this whole session, and that is sleep apnea. The sleep apnea is something I think would improve his daytime sleep phenomena. Because if he's not getting sleep at night and the appropriate oxygenation the next day, he's going to doze off or sleep or whatever the problems are. And definitely a sleep study should be done to see if that could improve those specific symptoms that he describes. This has been going on for some time, but it's progressively getting worse, obviously, if he's doing things or attending customers, etc., and he's certainly off somewhere, certainly this would not be in his best interests. This phenomena is a very common phenomena, and something that can be treated with CPAP or DIPAP at night. And the next day the individual feels that he can take on the world. It's a great deal of difference when appropriate therapy is carried out.

(AR 234-35).

The ALJ relied upon the ME's testimony to support his conclusion that plaintiff was limited to sedentary work (AR 16). The ALJ characterized the ME's testimony as follows:

> Dr. Wendt testified that claimant would be limited to sedentary work or less currently. He noted the recurrence of swelling in claimant's legs. However, prior to 1998 Dr. Wendt testified that claimant could do sedentary work or more. Dr. Wendt's testimony was a little confusing. At one point he said claimant could do more than sedentary work, but then he said that after claimant's hospitalization in 1997 he would have no more trouble. However, primarily he noted that claimant would have to avoid trauma to the wound site in order to avoid a recurrence of the infection.
>
> Dr. Wendt also noted that clamant is having trouble with sleep apnea. However, that condition is essentially untreated. He thought claimant would be much improved if he was able to use oxygen at night. I conclude from the medical expert's testimony that claimant could perform sedentary work prior to December 31, 1998.
>
> Dr. Wendt testified that claimant currently suffers from Reynaud's Syndrome. However, there is no evidence that this condition existed prior to December 31, 1998.

(AR 16).

### 2. Staph infections

The ALJ observed that nothing in the medical record substantiates the alleged severity of plaintiff's staph infections prior to the expiration of his insured date (AR 16). The ALJ found that while plaintiff had recurrent infections in his legs, "there is no real evidence that he would have trouble performing sedentary work" (AR 16). The ALJ concluded that plaintiff could not have returned to work as a spring maker, "but he could perform some type of sitting job" (AR 16). The ALJ also found that "although claimant would have trouble doing work that requires him to stand and walk on a recurrent basis, he could perform sedentary work" (AR 16-17). Based on this record,

9

the ME's testimony is sufficient to support the ALJ's conclusion that plaintiff's staph infections would not preclude sedentary work prior to December 31, 1998.

### 3. Sleep apnea

The ALJ found that there was no record that plaintiff's sleep apnea caused serious complications prior to December 31, 1998 (AR 16). The ME expressed some concern that the sleep apnea may predate 1998 (AR 236-37). However, plaintiff testified that it did not interfere with his work at the spring factory (which terminated in 1991 when the plant closed), or his subsequent employment at the servce station or his wife's store. After plaintiff's back surgery in 1992, his neurosurgeon noted stated that plaintiff had "rather severe and alarming sleep apnea" during post-operative observation (AR 142).

Plaintiff testified that he had problems falling asleep since 1992, but that he had no trouble falling asleep when working at the spring factory (1973-1991), at the BP station (1993-1994) or at his wife's store (1996) (AR 209-11, 214-15, 221-23). However, the record reflects that plaintiff made no mention of sleeping problems in a physical examination performed by Ronald Chusid, D.O. in February 2004 (AR 202). Plaintiff did report a history of sleep apnea when he sought emergency room treatment of his leg in August 2002 (AR 116). He also reported a history of sleep apnea to an examining physician in June 2003 (AR 152-61).

"[T]he mere diagnosis of an impairment does not render an individual disabled nor does it reveal anything about the limitations, if any, it imposes upon an individual." *McKenzie v. Commissioner of Social Security*, No. 99-3400, 2000 WL 687680 at *5 (6th Cir. May 19, 2000), *citing Foster v. Bowen*, 853 F.2d 488, 489 (6th Cir. 1988). When questioned by plaintiff's counsel about this condition, the VE testified that she could not interpret "a diagnosis of sleep apnea," but

needed to view the question "in terms of actual functional capacity" (AR 243). When plaintiff's counsel characterized the symptoms of this impairment as plaintiff falling asleep while he is performing tasks, the VE testified that such an impairment would preclude any unskilled sedentary work (AR 244). However, the ME testified that there is a distinction between narcolepsy (falling asleep spontaneously during the day) and sleep apnea (falling asleep during the day due to sleep deprivation) (AR 244-45). The ME testified that plaintiff's description of events sounded like sleep apnea rather than narcolepsy (AR 245).

There is little evidence that plaintiff's sleep apnea affected his ability to perform work related activities on or before December 31, 1998. Assuming that plaintiff had severe sleep apnea in 2003, such a finding would not be relevant to plaintiff's condition as it existed prior to the expiration of his insured status on December 31, 1998. Based on this record, the ALJ could properly determine that plaintiff's sleep apnea did not preclude all sedentary work.

### 4. **Lack of insurance**

Plaintiff testified that he has not been able to seek treatment with a vascular surgeon or obtain a sleep test for his sleep apnea because he does not have health insurance (AR 215-17, 238-39). While plaintiff may have been diagnosed with sleep apnea and staph infections before his last insured date, the medical records do not reflect any disabling symptoms arising from the sleep apnea. Plaintiff has not demonstrated that he was disabled from sleep apnea or the staph infections prior to December 31, 1998. The fact that plaintiff was financially unable to obtain a more complete diagnosis or treatment for his sleep apnea and staph infections does not establish that he was disabled by those medical conditions. "The issue of poverty as legal justification for failure to obtain treatment does not arise unless a claimant is found to be under a disabling condition." *Strong v.*

*Social Security Administration*, 88 Fed. Appx. 841, 846 (6th Cir. 2004), *citing McKnight v. Sullivan*, 927 F.2d 241, 242 (6th Cir. 1990).

### 5. Summary

It does not appear that plaintiff suffered from disabling medical conditions. However, even if plaintiff's medical conditions (i.e., staph infections and sleep apnea) had worsened to the point of rendering him disabled at the time of his administrative hearing on January 26, 2005, his condition on that date is only minimally relevant to his DIB claim. The ALJ was bound to determine plaintiff's condition as it existed when his DIB insured status terminated on December 31, 1998. After a review of the entire record, the court concludes that substantial evidence supports the ALJ's determination that plaintiff was not disabled on that date, and that he could perform a limited range of sedentary work between June 1, 1994 and December 31, 1998.

### C. Whether the Appeals Council erred in failing to consider or address the letter of plaintiff's counsel of June 10, 2005?

Finally, plaintiff contends that the Appeals Council committed error. Plaintiff filed a request for review in a letter dated May 16, 2005 (AR 7). Then, counsel sent a letter to the Appeals Counsel, dated June 10, 2005, which stated as follows:

> This office represents Mr. Thrasher with respect to his claim for benefits. The determination in this matter by the administrative law judge calls into question some testimony from the medical expert testifying on behalf of the Administration during the course of the hearing. My notes reflect that that testimony was favorable to the claimant but possibly could be interpreted as inconsistent. Therefore, I would request that a copy of the complete hearing transcript be provided to me and prepared in conjunction with the determination by this Council.

Plaintiff's Exh. A attached to Plaintiff's Brief.

The Appeals Council denied plaintiff's request for review on June 16, 2005. Plaintiff contends that the Appeals Council erred because a copy of his letter is not in the administrative record and the Appeals Council did not consider the letter. The court is concerned whenever the parties present it with an apparently incomplete record. In the present case, plaintiff has provided this court with the missing letter, which consists of a request for a hearing transcript. It is unclear whether the Appeals Council reviewed the letter before issuing its decision to deny plaintiff's request for review. However, even if the Appeals Council did not receive the letter, there is no basis for the court to review its denial of plaintiff's request for review. "Only final decisions of the [Commissioner] are subject to judicial review under [42 U.S.C.] § 405(g)." *Willis v. Secretary of Health and Human Servs.*, No. 93-6337, 1995 WL 31591 at * 2 (6th Cir. 1995), *citing Califano v. Saunders*, 430 U.S. 99, 108 (1977). When the Appeals Council denies review, the decision of the ALJ becomes the final decision of the Commissioner. *Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).

### IV. Recommendation

I respectfully recommend that the Commissioner's decision be affirmed.

Dated:  May 30, 2006                      /s/ Hugh W. Brenneman, Jr.
                                          Hugh W. Brenneman, Jr.
                                          United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).